STATE OF MAINE                                    SUPERIOR COURT

Cumberland, ss.                                        Civil Action


MARK KLEIN,

        Plaintiff

    v.                                      Docket No. CUMSC-CV-18-0377

JESSICA DEMERS-KLEIN
now known as Jessica Demers, and
AMANDA MYERS,                                           R:C: CUMB CLERKS OF
                                                        JUL 29 '20 PM2:08

        Defendants

                    ORDER ON DEFENDANTS' MOTIONS
                    FOR ADDITIONAL ATTORNEY FEES

        Defendant Amanda Myers's Application for Attorney Fees After Appeal and

Defendant Jessica Demers's Motion for Award of Attorney Fees are before the court,[1]

along with Plaintiff Mark Klein's memoranda in opposition to the motions and the

Defendants' reply memoranda.  The court elects to decide the motions without oral

argument.  *See* M.R. Civ. P. 7(b)(7).

        The Defendants' motions are brought under the anti-SLAPP statute. 14 M.R.S.

§ 556, which permits but does not require the court to award attorney fees to the

prevailing party.  *See id.* ("If the court grants a special motion to dismiss, the court

may award the moving party costs and reasonable attorney's fees, including those

incurred for the special motion and any related discovery matters.")  The Defendants

---

[1]  As the assigned single justice while the case was pending in Superior Court, I have been asked to decide the
pending motions.

clearly prevailed, the Superior Court having granted their special motions to dismiss and the Law Court having summarily affirmed the dismissal. *See Klein v. Myers*, Me. Supr. Jud. Ct., Docket No. CUM-19-258 (mem. dec. March 3, 2020).

The Defendants' motions seek awards of their attorney fees and costs incurred in opposing Plaintiff's motion for reconsideration of the Superior Court's April 17, 2019 dismissal order, and in opposing the Plaintiff's appeal of that Order and the Superior Court's August 13, 2019 Order awarding attorney fees and costs to the Defendants. The amounts requested by Defendants in their pending motions for additional awards are amply supported and documented in fee affidavits and records, and are reasonable and appropriate under the applicable factors. *See Poussard v. Commercial Credit Plan, Inc.*, 479 A.2d 881, 885 (Me. 1984).

Plaintiff Klein does not challenge any specific component of the fees and costs claimed. Instead, his opposition presents several blanket objections, none of which is substantiated. . In its August 13, 2019 Order making an initial award of fees, the court spelled out in detail the reasons why the fee award was justified. All of those reasons apply as well to the Defendants' motions for additional fees. For all of those reasons, Plaintiff Klein's decision to bring the underlying case was ill-advised and his decision to appeal the dismissal of the case even more so

It is hereby ORDERED AS FOLLOWS:

1. Defendant Amanda Myers's Application for Attorney Fees After Appeal is hereby granted. Defendant Amanda Myers is hereby awarded $21,365.57 in attorney

2

fees and costs against Plaintiff Mark Klein. Plaintiff shall make payment in full within 30 days of when the judgment becomes final.

2. Defendant Jessica Demers's Motion for Award of Attorney Fees is hereby granted. Defendant Jessica Demers is hereby awarded $23,954 in attorney fees and costs against Plaintiff Mark Klein. Plaintiff shall make payment in full within 30 days of when the judgment becomes final.

3. The foregoing awards are in addition to the amounts awarded to the Defendants in the court's August 13, 2019 Order.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated July 28, 2020

A. M. Horton, Justice

Entered on the Docket: 07/30/20

Plaintiff-Thomas Hallett, Esq.
Defendant Demers Klein-Elizabeth Germani, Esq.
Defendant Myers-Theodore Irwin, Esq.

3

STATE OF MAINE                                    SUPERIOR COURT

Cumberland, ss.                                   Civil Action


MARK KLEIN,                        )
                                   )
          Plaintiff                )
                                   )
    v.                             )        Docket No. CUMSC-CV-18-0377
                                   )
JESSICA DEMERS-KLEIN              )
now known as Jessica Demers, and   )
AMANDA MYERS,                      )
                                   )

REC'D CUMB CLERKS OF
APR

          Defendants

## ORDER ON DEFENDANTS' PENDING MOTIONS

Plaintiff Mark Klein has brought tort claims in this case against his former

spouses, Defendants Amanda Myers and Jessica Demers, who was formerly known as

Jessica Demers-Klein.   Each of the Defendants has filed a special motion to dismiss

pursuant to Maine's anti-SLAPP statute, 14 M.R.S. § 556[1] and also a motion to dismiss

pursuant to M.R. Civ. P. 12(b)(6).

---

[1]   The Media Law Resource Center describes anti-SLAPP statutes, their origins and purposes
as follows:

> Anti-SLAPP laws are designed to provide for early dismissal of meritless lawsuits
> filed against people for the exercise of First Amendment rights. The acronym
> "SLAPP" stands for "Strategic Lawsuit Against Public Participation – a phrase
> coined by two law school professors in the late 1980s. They identified a trend of
> retaliatory lawsuits brought to intimidate and silence opponents and critics who
> had spoken out in the public sphere, typically on land use and development issues.
> Anti-SLAPP statutes were proposed to provide a quick, effective and inexpensive
> mechanism to combat such suits.

http://www.medialaw.org/topics-page

For the Plaintiff:
Daniel Feldman, Esq.
For Jessica Demers:
Elizabeth Germani, Esq.
For Amanda Myers:
Theodore Irwin, Esq.

*Factual Background*

The following recitation of facts is drawn from Plaintiff Klein's Complaint and the affidavits and affidavit exhibits that each of the three parties has filed in connection with the Defendants' special motions to dismiss, and also from material that may be considered in connection with a Rule 12(b)(6) motion to dismiss.

The anti-SLAPP statute authorizes the court to consider affidavits (and presumably exhibits incorporated into and annexed to affidavits) in addressing a special motion to dismiss, *see* 14 M.R.S. § 556. Under Rule 12(b)(6), the court may consider "official public documents, documents that are central to the plaintiff's claim, and documents referred to in the complaint without converting a motion to dismiss into a motion for a summary judgment when the authenticity of such documents is not challenged." *See Moody v. State Liquor and Lottery Commission*, 2004 ME 20, ¶ 10, 843 A.2d 43, 48.

Mark Klein and Amanda Myers were married in January of 2003 and divorced on September 26, 2011. (Def. Myers Ex. 5 at 2)[2]; (Pl.'s Compl. ¶ 10). Klein and Myers have two daughters together, A.K. and E.K. (Pl.'s Compl. ¶ 4). Their divorce settlement provided that they had shared parental rights over A.K and E.K. (Def. Myers Ex. 5 at 4).

---

[2]  This and similar references are to the parties' affidavits and/or exhibits thereto.

2

Klein and Demers were married on January 2, 2015. (Pl.'s Compl. ¶ 13). They have one daughter together, S.K, born in September 2015. (Pl.'s Compl. ¶ 5). Klein and Demers lived together in Falmouth, Maine. (Demers Aff. ¶¶ 1, 9).

In 2016, the marital relationship deteriorated and Demers took her daughter S.K. to Pennsylvania on August 10, 2016, without notifying Klein. (Pl.'s Compl. ¶¶ 17-19).; (Demers Aff. ¶ 13). Klein filed for divorce from Demers on August 18, 2016. (Pl.'s Compl. ¶ 24). Klein left the marital home on August 22, 2016. (Pl.'s Compl. ¶ 37). Klein and Demers have lived separately since that date. (Pl.'s Compl. ¶ 37). (The two have since finalized their divorce, and Demers has returned to her previous surname. (Demers Aff. ¶ 34).

On August 31, 2016, as she was driving back to Maine, Demers received messages from Klein that the marital home had been broken into. (Demers Aff. ¶ 19). Demers spoke to police regarding the break-in. (Demers Aff. ¶ 19). She returned to Pennsylvania believing that Klein had staged the break-in. (Demers Aff. ¶ 19). On September 25, 2016, Demers installed a security system in the home. (Demers Aff. ¶ 22).

Prior to the break-in, on August 26, 2016, Demers had contacted Myers to check on Myers's daughters' wellbeing. (Demers Aff. ¶ 17), (Myers Aff. ¶ 7). The two Defendants met in person on September 19, 2016, with their attorneys present to discuss Klein's behavior of concern towards his daughters. (Demers Aff. ¶ 20).

After this meeting, Myers filed a protection from abuse ("PFA") complaint against Klein on behalf of herself and her children on September 22, 2016. (Myers Aff.

3

¶9). Myers was granted a temporary PFA order by the West Bath District Court on September 22, 2016. (Pl.'s Compl. ¶48).

Wanting to know the results of Myers's PFA action, Demers moved for a continuance of a parental rights hearing in the divorce case between her and Klein. (Demers Aff. ¶23); (Pl.'s Compl. ¶75). After the court granted Myers a temporary PFA order, the police searched Klein's residence for firearms on September 22, 2016 but found none. (Pl.'s Compl. ¶¶64-66); (Myers Aff. ¶10).

On September 30, 2016, the West Bath District Court convened a hearing on Myers's PFA complaint. (Demers Ex. 6). Demers was subpoena'ed to testify at the hearing. (Demers Aff. Myers and Demers testified

Also on September 30, 2016, Myers brought A.K. and E.K. to a pediatrician, Dr. Andrea Loeffler, to discuss Klein's behavior toward them, specifically what Myers described to the doctor as Klein's practice of applying balm to the girls' anuses. (Myers Aff. ¶11); (Pl.'s Compl. ¶50).

On October 3, 2016, Demers learned that her house had been broken into again. (Demers Aff. ¶25). Believing that Klein had perpetrated the break-in, Demers contacted Family Crisis Services ("FCS"), (Demers Aff. ¶25). Demers informed FCS about what had happened and that she believed Klein was the one who had broken into her home, in response to her testimony at the PFA hearing. (Demers Aff. ¶¶25-26).

The mandatory reporting law required FCS, upon receiving this information, to contact the Department of Health and Human Services ("DHHS") Office of Child

4

and Family Services ("OCFS") to report possible child abuse. (Demers Aff. ¶27); (Pl.'s Compl. ¶¶51-52). *See* 22 M.R.S. § 4011 (list of mandatory reporters).

When the OCFS contacted Demers on October 6, 2016, she answered questions about the break-in of her house, her daughter S.K., and the concerning behavior exhibited by E.K. (Demers Aff. ¶28). OCFS also called Myers on October 6, 2016. (Myers Aff. ¶12). OCFS referred this investigation to the Cumberland County District Attorney's Office for further investigation and the Brunswick Police began an investigation into Klein. (Pl.'s Compl, ¶¶61, 64).

On October 24, 2016, A.K and E.K. were interviewed by OFCS and the Brunswick Police Department. (Myers Aff. ¶13). Additionally, Myers was asked questions about Klein and his possible abuse of A.K and E.K. (Myers Aff. ¶14). On November 21, 2016, OCFS substantiated a finding that Klein had created a sexualized environment for A.K and E.K. (Demers Aff. ¶31); (Pl.'s Compl. ¶84). On February 23, 2017, OCFS reversed its substantiation. (Def. Myers Ex. 5 at 8).

During Myers's PFA hearing against Klein both Defendants testified about Klein's relationship and interactions with A.K. and E.K. (Demers Aff. ¶29); (Pl.'s Compl. ¶¶78-83). Also, an OCFS investigator testified that during the interview that OCFS conducted with Klein, Klein admitted that he had been applying "bag balm" to his older daughters' anuses from when they were in diapers to the present. Myers Aff. Ex. 2 at 271 (testimony of Ashley Emery at PFA hearing). The investigator also said Klein admitted to sleeping in the same bed with his older daughters and

5

acknowledged that he had showered with them although the investigator said Klein claimed to have been wearing a wetsuit at the time. *Id.* at 272-277.

On October 21, 2016, Klein filed a motion to modify the divorce judgment seeking primary physical residence of E.K and A.K., allocated parental rights and responsibilities, and child support. (Def. Myers Ex. 5 at 9). On December 10, 2016, Myers filed a motion to Modify Divorce Judgment seeking sole parental rights and responsibilities, primary residence of E.K. and A.K., sole discretion over visitation, and child support. (Def. Myers Ex. 5 at 9). On December 12, 2016, Myers dismissed her PFA action. (Pl.'s Compl. ¶89).

On September 11, 2017, the family court issued an order amending Klein's and Myers's divorce judgment. (Myers Aff. ¶18). This order granted Myers allocated parental rights and responsibilities and primary residence of A.K. and E.K. (Def. Myers Ex. 5 at 27). The order granted Klein one four-hour after school visit and one four-hour weekend visit each week, with increased contact if therapeutically supported. (Def. Myers Ex. 5 at 27).

Additionally, the court ordered counseling for Klein to assist in his reunification with A.K. and prohibited both parent from discussing litigation matters with their children and from using their children to get information about the other parent. (Def. Myers's Ex. 5 at 28). The order required Klein to pay Myers back child support and $340.13 per week. (Def. Myers Ex. 5 at 28-29). Neither party was awarded attorney's fees, based on their behavior and litigation strategies during the course of the proceeding. (Def. Myers Ex. 5 at 31).

6

Demers and Klein finalized their divorce on October 16, 2018. (Demers Aff. ¶34). The Divorce Judgment awarded Demers and Klein shared parental rights and responsibilities for S.K. (Demers Ex. 4 at 7). Primary residence for S.K. was with Demers, and Klein received a four-phase contact schedule and split holidays and vacation. (Demers Ex. 4 at 8-9). Klein is required to pay Demers $152 child support per week. (Demers Ex. 4 at 12). No attorney's fees were awarded. (Demers's Ex. 4 at 15).

*Procedural History*

Plaintiff Klein filed his complaint August 21, 2018, alleging 11 counts against Defendant Jessica Demers and Defendant Amanda Myers: (1) abuse of process; (2) wrongful use of civil process; (3) fraud; (4) defamation; (5) defamation *per se*; (6) invasion of privacy; (7) intentional infliction of emotional distress; (8) violation of civil/constitutional rights; (9) negligence; (10) negligent infliction of emotional distress; and (11) civil conspiracy.

The court granted Demers's motion to enlarge time to file an answer on September 26, 2019 and she filed an answer on October 16, 2018. Myers filed an answer on October 23, 2018. The court granted Demers's unopposed motion to seal on November 11, 2018 and granted Myers's unopposed motion to seal on December 12, 2018.

Demers filed a motion to dismiss pursuant to M.R. Civ. P. 12(b)(6) and a special motion to dismiss pursuant to 14 M.R.S. § 556 on November 6, 2018. Klein filed an

7

opposition to Demers's motions on November 27, 2018. Demers filed a reply to Klein's opposition on December 4, 2018.

Myers filed a motion to dismiss pursuant to M.R. Civ. P. 12(b)(6) and a special motion to dismiss pursuant to 14 M.R.S. § 556 on December 3, 2018. Klein filed an opposition to Myers's motions on December 26, 2018. Myers filed a reply to Klein's opposition on January 2, 2019.

*Discussion*

## I.      Applicability of Maine's anti-SLAPP statute to this case

Both Defendants' special motions to dismiss argue that Klein's complaint should be dismissed in its entirety because the alleged causes of action all arise from what Maine's anti-SLAPP statute defines as protected "petitioning activity." 14 M.R.S. § 556 (2017).

The statute provides in pertinent part

> When a moving party asserts that the civil claims, counterclaims or cross claims against the moving party are based on the moving party's exercise of the moving party's right of petition under the Constitution of the United States or the Constitution of Maine, the moving party may bring a special motion to dismiss. The special motion may be advanced on the docket and receive priority over other cases when the court determines that the interests of justice so require. The court shall grant the special motion, unless the party against whom the special motion is made shows that the moving party's exercise of its right of petition was devoid of any reasonable factual support or any arguable basis in law and that the moving party's acts caused actual injury to the responding party. In making its determination, the court shall consider the pleading and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

14 M.R.S. § 556.

8

## a. The Three-Step Special Motion to Dismiss Standard

What procedure and analysis trial courts in Maine are to apply in addressing a section 556 special motion to dismiss has evolved over time, as the Maine Law Court has noted. *See Gaudette v. Davis*, 2017 ME 86, ¶¶ 5-12, 160 A.3d 1190. In its most recent decision under Maine's anti-SLAPP statute, 14 M.R.S. § 556, the Maine Law Court said:

> The application of the anti-SLAPP statute results in an inherent tension between the coexisting constitutional right to freedom of speech and the right to access the courts to seek redress for claimed injuries. Accordingly, in addressing a special motion to dismiss, the reviewing court must be careful to recognize these competing rights and work to achieve an appropriate balance. In an effort to achieve this balance, we require that the reviewing court use a three-step burden-shifting procedure.
>
> *Hearts with Haiti, Inc. v. Kendrick*, 2019 ME 26, ¶ 10, ___ A.3d___,___ (internal citations omitted).

The procedure is as follows:

At the first step, the special movant must establish, as a matter of law, that "the claims against [her] are based on [her] exercise of the right to petition pursuant to the federal or state constitutions." *Gaudette v. Davis*, 2017 ME 86, ¶¶ 16-17, 160 A.3d 1190 (quoting *Morse Bros. v. Webster*, 2001 ME 70, ¶ 19, 772 A.2d 842). If the special movant fails to make the showing, the anti-SLAPP statute does not apply and the special motion to dismiss is denied. *Hearts of Haiti, Inc. v. Kendrick*, 2019 ME 26 at ¶ 11, ___A.3d at ___. If the special movant does make that showing, the inquiry moves to step 2, at which the burden shifts to the plaintiff. *Gaudette v. Davis*, 2017 ME 86 at ¶ 17.

9

The plaintiff's burden at the second step is to make a prima facie showing that the defendant's "petitioning activity" was "devoid of any reasonable factual support or any arguable basis in law" and that the" petitioning activity" caused the plaintiff injury. *Id.* (quoting *Nader v. Me. Democratic Party (Nader I)*, 2012 ME 57, ¶¶ 16, 29-38, 41 A.3d 551). If the plaintiff fails to carry that burden, the special motion to dismiss is granted. *Id.*

If the plaintiff does carry that burden, the inquiry proceeds to the third step, at which the court, on motion of any party, "permits the parties to undertake a brief period of limited discovery, the terms of which are determined by the court after a case management hearing, and ☐ at the conclusion of that limited discovery period, the court conducts an evidentiary hearing." *Id.* at ¶ 18.

With this framework at hand, the analysis proceeds to the first step—whether Myers and Demers have each established as a matter of law that the conduct on which Klein's claims are based qualifies as "petitioning activity" for purposes of the anti-SLAPP statute.

b. Step One: Whether Defendants Have Shown that the Claims Against Them Are Based on Petitioning Activity

Defendants contend that Klein has sued them for engaging in protected "petitioning activity." (Def. Myers's Special Mot. Dismiss 8, 12); (Def. Demers's Special Mot. Dismiss 7).

Klein argues that the anti-SLAPP statute does not even apply in this case because: (1) his intent in bringing this law suit is not to chill the Defendants'

10

"petitioning activities" but rather to seek damages for Defendants' actions, (Pl.'s Opp'n to Def. Myers's Special Mot. Dismiss 2); (2) Defendants had ulterior motives when engaging in their "petitioning activities," (Pl.'s Opp'n to Def. Myers's Special Mot. Dismiss 6); (3) Defendants' "petitioning activities" were based on lies, (Pl.'s Opp'n to Def. Myers's Special Mot. Dismiss 7-8); and (4) his complaint is based on Defendants' pre-petitioning actions and not their "petitioning activities," (Pl.'s Opp'n to Def. Myers's Special Mot. Dismiss 2).

Klein's contention that his own alleged intent and the Defendants' alleged ulterior motives are relevant to the step one analysis is unpersuasive. Klein's intent in bringing this action is irrelevant to the question of whether the anti-SLAPP statute applies, because the statute establishes that a lawsuit premised entirely upon a defendant's petitioning activity should not be permitted to chill the defendant's exercise of First Amendment rights, unless the defendant's activity has no arguable factual support or basis in law and has harmed the plaintiff.

As to the relevance of the Defendants' motives, the Massachusetts Supreme Judicial Court has construed the similar Massachusetts anti-SLAPP statute to mean that "[a] special movant's motivation for engaging in petitioning activity does not factor into whether it has met its threshold [step one] burden." *477 Harrison Ave., LLC v. JACE Boston, LLC*, 477 Mass. 162, 168, 74 N.E.3d 1237 (2017), *citing Office One, Inc. v. Lopez*, 437 Mass. 113, 122, 769 N.E.2d 749 (2002). It is the step two analysis that has more to do with a special movant's motivation, in exploring the factual and legal basis for the special movant's petitioning activities.

11

Klein argues that because he is suing the Defendants for lying about him, the anti-SLAPP statute does not apply. That argument, too, is relevant to the step two inquiry, at which he has the burden to show that the Defendants lacked a factual or legal basis for their activity, but it is not relevant to the step one inquiry.

Klein's one threshold argument that is relevant to the step one inquiry is that his claims against Myers and Demers are based on their "pre-petitioning activity" rather than petitioning activity.

Maine's anti-SLAPP statute defines "a party's exercise of its right of petition" to encompass written or oral statements in six different categories:

[1] "any written or oral statement made before or submitted to a legislative, executive or judicial body, or any other governmental proceeding";

[2] "any written or oral statement made in connection with an issue under consideration or review by a legislative, executive or judicial body, or any other governmental proceeding";

[3] "any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive or judicial body, or any other governmental proceeding";

[4] "any statement reasonably likely to enlist public participation in an effort to effect such consideration"; or

[5] "any other statement falling within constitutional protection of the right to petition government."

14 M.R.S. § 556.

Klein's complaint contains eleven counts. The court's review of a special motion to dismiss does not necessarily lead to an "all or nothing" outcome—the special motion may be granted as to some of the plaintiff's claims and denied as to others. *See Gaudette*

12

*v. Davis*, 2017 ME 86, ¶17, 160 A.3d 1190; *Camden Nat'l Bank v. Weintraub*, 2016 ME 101, ¶9, 143 A.3d 788.

Count 1 (Abuse of Process) – Klein alleges that Defendants "used the legal and law enforcement system in a manner improper in the regular conduct of such proceeding." (Pl.'s Compl. ¶106). By its very nature, this count must be based on statements to judicial and law enforcement agencies, and thus it concerns "petitioning activity" as defined in section 556.

Count 2 (Wrongful use of Civil Process) - Klein alleges that Myers "sought a protection from abuse" order (Compl. ¶112), and Demers sought "a continuance of an interim hearing," (Compl. ¶106). This count as well is plainly based on "petitioning activity" as defined in section 556. *See Morse Bros. v. Webster*, 2001 ME 70, ¶¶29-31, 772 A.2d 842.

Counts 3 (Fraud), 4, (Defamation), and 5 (Defamation *per se*) – Klein asserts that both Myers and Demers are liable to him for fraud and defamation based on various statements, as follows.

Paragraphs 119(A)-(E) of Klein's complaint enumerate the following allegedly fraudulent and defamatory statements by Demers:

A. Statements made by Demers to Myers on August 22, 2016 that Demers has seen Klein applying bag balm to the anuses of his two older daughters and that Demers interprets Klein's actions as not being for medical purposes but for sexual abuse.

B. Statements by Demers to Family Crisis Services on October 5, 2016 that Klein has sexually abused his daughters with Myers by applying bag balm to their anuses and that Demers has seen him do so.

13

C. Statements by Demers on October 6, 2016 to an Office of Child and Family Services investigator that Klein displayed inappropriate and sexualized behavior towards his children; that Klein was responsible for two break-ins at Demers's home and that Klein had committed domestic violence against Demers.

D. Statements by Demers on October 24, 2016 to the Maine District Court that she was concerned about the wellbeing of her daughter with Klein based on the allegations contained in Myers's PFA complaint against Klein. Klein asserts Demers knew that Myers's PFA complaint was largely based on Demers's own disclosures to Myers.

E. Statements by Demers September 30, 2016 and on November 14, 2016, in the course of her testimony at the PFA hearing in Myers's PFA case against Klein.
(Compl. ¶ 119).

Klein's complaint at paragraph 120(A) through (D) alleges the following against Myers:

(A) In her affidavit dated September 22, 2016 to support the temporary PFA Order [Myers] averred falsely that:

Klein routinely and without cause applied bag balm to the anus of both her children;
Klein showers with her children;
Klein has sexually abused his children;
Klein is a threat to sexually abuse his children; Klein had threatened to kill [Myers]

(B) On or about October 6, 2016 [Myers] made false and misleading statements to an OCFS investigator:

Klein inflicted domestic violence against her;
She was aware of, and corroborated the sexualized behavior of Klein as presented by [Demers];
Such corroboration by [Myers] was false and misleading;
Klein has a repeated history of prostitution;
Klein perpetrates emotional abuse against his children.

14

(C)  In a meeting on October 24, 2016 [Myers] falsely told a representative of the Brunswick police department:

> There is no valid reason for Klein to apply any ointment to his daughters;
> Klein raped his neighbor.

(D)  On or about September 30, 2016 and again on November 14, 2016, [Myers] made false and misleading statements to the PFA court:

> Her children with Klein did not have skin conditions in their anus region;
> Her children with Klein did not have any problems with their bowels;
> She knew of no incident other than in their infancy, where the children have been treated for discomfort regarding their ani;
> Her children never had eczema near their ani.

(Pl.'s Compl. ¶ 120).

Myers's and Demers's alleged statements made in court and made to the OCFS investigator plainly fall within the definition of "petitioning activity." *See* 14 M.R.S. § 556 (definition includes "any written or oral statement made in connection with an issue under consideration or review by a legislative, executive or judicial body, or any other governmental proceeding").

Demers's alleged disclosure to Myers and Demers's and Myers's disclosures to an FCS employee are less clearly so.  However, the statutory definition of "petitioning activity" is not limited to statements made directly to governmental entities or agencies.  The definition includes "any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive or judicial body, or any other governmental proceeding" means that any statement that is reasonably likely to trigger governmental review can fall within the scope of petitioning activity.

15

To qualify as a statement "reasonably likely to encourage consideration or review" by a government body or agency, the statement need not be submitted or made directly to the governmental body, because statements "made before or submitted to" a governmental body are separately included in the statutory definition of "petitioning activity." To qualify as a statement "reasonably likely to encourage consideration or review," a statement need only be likely to trigger some form of governmental action or review.

Demers's statements to Myers were a primary basis for Myers's subsequent PFA complaint. Demers was subpoena'ed to testify at the PFA hearing and, according to the transcript of portions of her testimony, she repeated in court the statements she had previously made to Myers, FCS and the OCFS. For purposes of the definition of "petitioning activity," it could be "reasonably expected" that Demers's disclosure to Myers about Klein's sleeping arrangements with his daughters and his application of bag balm would trigger the action that Myers promptly took—invoking the judicial PFA remedy and seeking to modify the divorce judgment.

Moreover, Family Crisis Services provides support and advocacy for victims of abuse and domestic violence and has been affiliated with the Maine Coalition to End Domestic Violence. *See Craig v. Caron*, 2014 ME 115, ¶ 14, 102 A.3d 1175. Maine law requires individuals in certain positions and occupations, including family and domestic violence advocates, to report suspected child abuse or neglect. *See* 22 M.R.S. § 4011-A (enumerating mandated reporters of child abuse or neglect). As such,

16

statements to FCS about abuse or domestic violence are reasonably likely to be conveyed to either law enforcement or DHHS or both.

In fact, Klein's complaint bolsters this point in alleging that Demers and Myers "knew or should have known" that their disclosures to OCFS and/or FCS would be forwarded to the District Attorney's office for investigation. (Pl. Compl. ¶¶62-63).

Klein additionally alleges that Myers made statements to the children's pediatrician that he sexually abused his children. (Pl.'s Compl. ¶50). Physicians are mandated reporters of suspected child abuse or neglect under Maine law. *See* 22 M.R.S. § 4011-A. Thus, although Myers denies saying Klein committed sexual abuse, her statements to the pediatrician about his behavior toward their daughters were "reasonably likely to encourage consideration or review of an issue by a legislative, executive or judicial body," within the meaning of the section 556 definition of "petitioning activity."

Whether anti-SLAPP protection applies is admittedly closest as to Demers's initial disclosure to Myers. Klein contends that the disclosure constitutes "pre-petitioning activity" not protected by the anti-SLAPP statute. However, "communications that are intimately intertwined with, and preparatory to, the filing of judicial proceedings qualify as petitioning activity for the purpose of the anti-SLAPP statute." *Graham-Suit v. Clainos*, 738 F.3d 1131, 1142-43 (9th Cir. 2013), *quoting Cabral v. Martins*, 177 Cal. App. 4th 471, 99 Cal. Rptr. 3d 394, 404 (Ct. App. 2009). "In the anti-SLAPP context, the critical point is whether the plaintiff's cause

17

of action itself was based on an act in furtherance of the defendant's right of petition or free speech." *City of Cotati v. Cashman*, 29 Cal. 4th 69, 78, 52 P.3d 695 (2002).

Klein also contended at oral argument that Demers could not invoke the anti-SLAPP statute because she was not exercising her own right of free speech, and cited the decision of the undersigned judge in *Warren v. Preti, Flaherty, Beliveau & Pachios, LLC*, 2012 Me. Bus. & Consumer LEXIS 29 at *13-15. In that case, however, the court decided that a business's response to a state agency investigation could not qualify as petitioning activity because the business was responding to, not initiating, a governmental inquiry. *See id.* at *14 ("[The special movant] did not bring the alleged security violations to the attention of the Office of Securities; *had it done so, this analysis might have had a different outcome.* [The special movant] was simply responding to inquiries in the context of a government investigation of third parties.") (emphasis added).

Here, Demers did bring the concern to the attention of Myers and then to FCS and OCFS. She was exercising the right of any person to report inappropriate acts involving a child to the child's parent and then to appropriate authorities. Her disclosure to Myers was a prelude to her disclosures to FCS, OCFS and ultimately to the District Court in the PFA hearing. The fact that persons who in good faith report suspected child abuse are statutorily immune from civil or criminal liability provides

18

support for the conclusion that Demers's statements to Myers, FCS and OCFS fall within the definition of protected "petitioning activity." *See* 22 M.R.S. § 4014(1).[3]

For these reasons, the court concludes that Demers's statements to Myers, and both Defendants' disclosures to FCS and the OCFS and their testimony in District Court alleged in Counts 4 and 5 of Klein's complaint are all "petitioning activity."

Count 6 (Invasion of Privacy) – Klein alleges that Defendants caused an invasion of his personal privacy. (Pl.'s Compl. ¶¶ 135-39). Klein generally states that Defendants invaded his privacy through "their actions." However, Klein does not specify how Defendants invaded his privacy, other than through the same statements and actions that are the basis for his defamation claims. (*See* Pl.'s Compl. ¶ 61 ("As a result of the report to OCFS by Family Crisis Services and the false statement made by [Defendants], Klein was referred to the Cumberland County District Attorney's office for investigation); ¶ 65 ("Police confronted Klein . . . causing an invasion of his quietude.")). Thus, the court construes Klein's invasion of privacy claim to be based on what the court has already determined was "petitioning activity."

Count 7 (Intentional Infliction of Emotional Distress) and Count 10 (Negligent Infliction of Emotional Distress) – Klein alleges that "Defendants' actions" caused him extreme emotional distress. (Pl.'s Compl. ¶¶ 141-44, 157-62). Again, Klein does not identify any actions by Defendants beyond what the court has already decided fall

---

[3] In fact, the immunity statute incorporates a definition of "good faith" that is similar to the anti-SLAPP statute's "devoid of any reasonable factual support or any arguable basis in law" standard. *See* 14 M.R.S. § 4014(1) ("Good faith does not include instances when a false report is made and the person knows the report is false

19

within the definition of "petitioning activity." (*See* Pl.'s Compl. ¶69 ("The investigation by OFCS caused Klein great embarrassment and harm to his reputation"); ¶90 ("The legal actions taken against Klein have caused him great embarrassment and harm to his reputation"); ¶91 ("The legal actions taken against Klein have caused him considerable psychological trauma and duress for which he has required active medical treatment and therapeutic assistance.")). Accordingly, the court deems Klein's emotional distress claim to be based on the Defendants' "petitioning activity."

Count 8 (Violation of Civil Rights/Constitutional Rights) – Klein alleges that Defendants used the court system to deprive him of his constitutional rights. (Pl.'s Compl. ¶¶146-50). This claim plainly is based on Defendants' "petitioning activity."

Count 9 (Negligence) – Klein's negligence claim once again generally refers to "Defendants' actions" as the basis of his negligence claim brought on behalf of his daughters, but does not allege any actions beyond those already addressed above. (Pl.'s Compl. ¶¶151-55). Thus, the negligence claim, too, is premised upon Defendants' "petitioning activity." (*See* Pl.'s Compl. ¶49 ("Temporary Restraining Order prevented Klein from communicating, visiting with or parenting his two daughters."); ¶77 ("Due to the misleading allegations made by Jessica regarding the PFA Complaint to the Family Court, Klein was again limited in his rights to interact with his daughter.")).

Count 11 (Civil Conspiracy) – Klein's civil conspiracy claims are based on Defendants' actions during judicial proceedings and an executive branch investigation and thus constitute "petitioning activity." (Pl.'s Compl. ¶¶ 163-66).

For the reasons given, the court deems all of Klein's claims set forth in his complaint to be based on Defendants' "petitioning activities" within the definition of "petitioning activity" contained in section 556. Accordingly, the Defendants' special motions to dismiss have met the Defendants' step 1 burden to show that the claims against them are within the anti-SLAPP statute.

c. Step Two: Devoid of any Reasonable Factual Support or any Arguable Basis in Law

The burden shifts to Klein to show that the Defendants' "petitioning activity" was "devoid of any reasonable factual support or any arguable basis in law" and that the petitioning activity caused him injury. *Nader I*, 2012 ME 57, ¶ 16, 41 A.3d 551. This test does not determine whether the alleged false or fraudulent statements were more likely true or more likely untrue, but looks only at whether they had any reasonable basis in fact. *See Gaudette*, 2017 ME 86 ¶ 21, 160 A.3d 1190.

The Defendants' factual allegations as to Klein's conduct fall into the following general areas:

- The allegation that he was in the habit of doing "bum checks" on his daughters and applying "bag balm" to their anuses.

- The allegation that he slept in the same bed as one or both of his older daughters

21

- The allegation that he had committed domestic violence against Myers and sexual assault against a neighbor.

- The allegation that he had showered with his older daughters.

Klein alleges that Defendants' references are based on lies and "half-truths." (Pl.'s Opp'n to Def. Myers's Special Mot. Dismiss 7-11). Klein provides transcripts from the 2016 PFA hearing and contradictory emails exchanged from 2011 to 2014 between Klein and Myers. (Pl.'s Ex. A, B, C). Establishing that a party's petitioning was based on "totally false" claims may constitute a prima facie showing that their "petitioning activity" was devoid of any reasonable factual support. *See Gaudette*, 2017 ME 86, ¶ 24, 160 A.3d 1190.

However, Klein's affidavit and memorandum submitted in opposition to the special motions to dismiss focus, for purposes of step 2, almost entirely upon the "bag balm" allegation. (*See* Pl.'s Opp'n to Def. Myers's Special Mot. Dismiss at 8-11; Affidavit of Mark Klein ¶¶ 18, 35-49). For example, Klein's affidavit does not deny the domestic violence allegation or that he has slept in the same bed with his daughters.

Moreover, even as to the "bag balm" allegations, Klein's affidavit does not deny that he has applied "bag balm" to his older daughters as Demers and Myers have asserted.

22

Thus, Klein does not seem to challenge the accuracy of Demers's and Myers's description of his behavior toward his older daughters. What he clearly does challenge is the interpretation he says they have placed on his behavior.

Although the Defendants deny that they ever accused Klein of child abuse or went beyond reporting his observed behavior, tt seems clear that Myers and Demers believed that Klein had engaged in inappropriate behavior at least toward his oldest daughter and came forward to FCS, OCFS and the court based on that belief. However, the focus is not on the validity of Myers's and Demers's opinion of Klein's behavior. Instead, the question is whether their opinion was devoid of any factual support. Based on the record, Klein has not established that what Demers and Myers reported to FCS, OCFS and the court was devoid of any factual support.

As noted above, the only aspect of their report Klein attempts to controvert is the Defendants' report that he was applying "bag balm" to his older daughter's anal areas. The record contains factual support for that report. Specifically, the record includes portions of the transcript of sworn court testimony by an investigator for OCFS that Klein acknowledged during an interview with her that he had been applying "bag balm" to the girls' anuses "since they were in diapers until now . . .," due to irritation and redness due to constipation Myers Aff., Ex. 2 at 268-70, 274. The witness also testified that the OCFS had determined that Klein had been applying "bag balm" to the older girls' anuses. *Id.* at 274.

Klein's memoranda in opposition to both special motions do not dispute that Klein acknowledged to the OCFS investigator that he had continued to apply "bag

23

balm" to his older daughters' anuses, as Demers and Myers asserted.[4] Instead, his opposition to Myers's special motion spends considerable energy justifying his use of "bag balm" and attacking Myers for supposedly claiming she did not know Klein was applying "bag balm." His affidavit includes email exchanges between him and Myers indicating plainly that Myers did know about Klein's use of "bag balm" at least as of 2013. Klein Aff. Ex. C.

The focus at this step 2 stage must remain on whether Klein has made a prima facie showing that Myers's allegations about the "bag balm" lacked reasonable factual support. Whether Myers knew that Klein had used it on the girls, and whether Myers had ever used it herself in the same manner, are not relevant.[5] The OCFS' investigator's sworn testimony that Klein had acknowledged his continued application of "bag balm" provides factual support for Demers's and Myers's allegations.

For purposes of step 2 of the analysis of Myers's and Demers's special motions to dismiss, the court concludes that Klein has not made a prima facie showing that the Defendants' disclosures regarding his application of "bag balm" to his older daughters were devoid of any reasonable factual support. Those being the only "petitioning

---

[4] At oral argument, however, Klein suggested that the OCFS investigator had misunderstood his answers to her questions. Be that as it may, her testimony plainly substantiates the validity of the Defendants' allegation.

[5] Myers responds to Klein's accusation by pointing out that she does not dispute knowing about Klein's use of "bag balm" when her daughters were younger; she says it was the revelation that Klein was still applying "bag balm" and still doing "bum checks" when the girls were old enough to tend to themselves, along with his practice of staying in the same bed with them, that caused her to suspect Klein's motives. *See* Myers Aff. ¶ 7; Def. Myers's Reply Mem. In Support of Special Mot. Dismiss at 13. Her testimony at the PFA hearing was to the same effect.

activities" that Klein's opposition attempts to controvert, the court further concludes that Klein has not met his burden for purposes of step 2 of the *Gaudette v. Davis* analysis.

Therefore, there is no occasion or basis for the analysis to proceed further along the three-step procedure.

*Conclusion*

Defendants Amanda Myers and Jessica Demers have established that Plaintiff Mark Klein's claims against them are based on the Defendants' petitioning activity within the meaning of the Maine anti-SLAPP statute. *See* 14 M.R.S. § 556. In response, Plaintiff Mark Klein has failed to meet his burden to establish that the Defendants' petitioning activity was devoid of any reasonable factual support or basis in law.

This result makes it unnecessary to address the Defendants' Rule 12(b)(6) Motions.

The Maine anti-SLAPP statute authorizes the court to award costs and reasonable attorney fees to the moving party on a special motion to dismiss. *See* 14 M.R.S. § 556 ("If the court grants a special motion to dismiss, the court may award the moving party costs and reasonable attorney's fees, including those incurred for the special motion and any related discovery matters"). This Order authorizes Defendants Myers and Demers to file a motion for an award of attorney fees and costs, including fee affidavits. Briefing on any such motion shall proceed according to the applicable civil rule.

Accordingly, it is ORDERED AS FOLLOWS:

1. The Special Motions to Dismiss filed by Defendants Amanda Myers and Jessica Demers are hereby granted.

2. The Defendants' Motions to Dismiss pursuant to M.R. Civ. P. 12(b)(6) are hereby dismissed as moot.

3. In light of the grant of Defendants' special motions to dismiss, the court will consider awarding Defendants their costs and reasonable attorney fees against Plaintiff pursuant to 14 M.R.S. § 556. Defendants may file motions for an award of costs and attorney fees within 21 days of the docketing of this Order, and further briefing on any such motions shall be according to M.R. Civ. P. 7(c) and (e).

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated April 17, 2019

_____

A. M. Horton, Justice

Entered on the Docket: 4/22/19

26

STATE OF MAINE                                    SUPERIOR COURT

Cumberland, ss.                                       Civil Action

MARK KLEIN,

        Plaintiff

        v.                                Docket No. CUMSC-CV-18-0377

JESSICA DEMERS-KLEIN
now known as Jessica Demers, and
AMANDA MYERS,

        Defendants

ORDER ON DEFENDANTS' MOTIONS FOR ATTORNEY FEES

Defendant Amanda Myers's Motion for Attorney Fees and Defendant Jessica Demers's Motion for Award of Attorney Fees and Costs are before the court, along with Plaintiff Mark Klein's memorandum in opposition to both motions and the Defendants' reply memoranda. The court elects to decide the motions without oral argument. *See* M.R. Civ. P. 7(b)(7).

The Defendants' motions are brought under the anti-SLAPP statute. 14 M.R.S. § 556, which permits but does not require the court to award attorney fees to the moving party after granting a special motion to dismiss. *See id.* ("If the court grants a special motion to dismiss, the court may award the moving party costs and reasonable attorney's fees, including those incurred for the special motion and any related discovery matters.")

The Defendants' Motions seek an award of their attorney fees and costs.

REC'D CUMB CLERKS OFC
AUG 13 '19 AM 11:25

Plaintiff Mark Klein's opposition to any award of attorney fees is based on two arguments: "(1) this case falls outside of the purpose for which the Anti-SLAPP statute was created; and (2) the statute and the Law Court decisions interpreting the statute are extremely confusing and inconsistent." Plaintiff's Opposition to Defendants' Motions for Attorney Fees at 1.

Neither argument is persuasive.

Contrary to Plaintiff's first argument, this case fits the template that the anti-SLAPP statute was intended to address—meritless lawsuits brought in order to punish or deter rather than in order to prevail.

All of the Defendants' statements that are the subject of Plaintiff's claims were subject to at least a qualified privilege and most were subject to an absolute privilege.

The Law Court has recognized that an absolute privilege attaches to defamatory communications preliminary to or during a judicial proceeding, provided the communications have "some relation" to the proceeding and the maker of the communications participates in the proceeding. *See Raymond v. Lyden*, 1999 ME 59, ¶ 6 & n.7, 728 A.2d 124, *quoting* RESTATEMENT (SECOND) OF TORTS § 587.

"The privilege is absolute and 'protects a party to a private litigation . . . from liability . . . irrespective of his purpose in publishing the defamatory matter, of his belief in its truth or even his knowledge of its falsity.'" *Id.*, *quoting* RESTATEMENT (SECOND) OF TORTS § 587, cmt a.

Defendants' statements to the police, the pediatrician, family crisis advocates and the Department of Health and Human Services (DHHS) caseworkers were also

2

protected, at least by a qualified privilege if they were not absolutely privileged. *See Truman v. Browne*, 2001 ME 182, ¶ 15, 788 A.2d 168 ("Any person has a qualified privilege to make statements to law enforcement or regulatory agencies regarding the conduct of others, where the person making the statement believes in good faith that the statement is true and indicates that a statutory standard administered by the agency may have been violated.")

Plaintiff Klein was unlikely to overcome even a qualified privilege, given that he admitted to a DHHS caseworker the truth of the central allegation that the Defendants brought forward.

Plaintiff, having been advised and represented by legal counsel, must have known that his case had little, if any, chance of success, but he decided to proceed anyway. That decision lends credence to the Defendants' claim that Plaintiff was motivated by punitive or deterrent considerations in bringing this action, rather than by any real expectation that the case could succeed on its merits. That point serves to distinguish this case from the Law Court decision upon which Plaintiff Klein's opposition mainly relies, *Maietta v. Wainwright*, 2004 ME 53, 847 A.2d 1169.

Plaintiff's' second argument—that the anti-SLAPP statute and the Law Court's decisions under it are too confusing to justify an attorney fee award—has equally little merit. The statute is broad but not vague. The Law Court's jurisprudence has evolved in terms of the mechanics of how a special motion to dismiss is addressed, but is not confusing. It has always stood for the proposition that a party who brings a

3

lawsuit that is dismissed pursuant to a section 556 special motion to dismiss may be assessed for the movant's attorney fees.

Accordingly, the Defendants' motions will be granted. Plaintiff Klein has not made a substantial challenge to the amounts requested, nor has he suggested that the effort attributable to the Defendants' Rule 12(b)(6) motions be separated from the effort attributable to the section 556 special motions to dismiss. The amounts requested by Defendants are amply supported and documented in fee affidavits and records, and are reasonable and appropriate under the applicable factors. *See Poussard v. Commercial Credit Plan, Inc.*, 479 A.2d 881, 885 (Me. 1984).

It is hereby ORDERED AS FOLLOWS:

1. Defendant Amanda Myers's Motion for Attorney Fees is hereby granted. Defendant Amanda Myers is hereby awarded $28,240 in attorney fees and $450 in costs against Plaintiff Mark Klein. Plaintiff shall make payment in full within 30 days of when the judgment becomes final.

2. Defendant Jessica Demers's Motion for Award of Attorney Fees and Costs is hereby granted. Defendant Jessica Demers is hereby awarded $18,856 in attorney fees and $384.52 in costs against Plaintiff Mark Klein. Plaintiff shall make payment in full within 30 days of when the judgment becomes final.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated August 13, 2019

A. M. Horton, Justice

STATE OF MAINE                                    SUPERIOR COURT

Cumberland, ss.                                      Civil Action


MARK KLEIN,                        )
                                   )
            Plaintiff              )
                                   )
      v.                           )        Docket No. CUMSC-CV-18-0377
                                   )
JESSICA DEMERS-KLEIN              )
now known as Jessica Demers, and  )
AMANDA MYERS,                     )
                                   )
            Defendants

ORDER ON DEFENDANTS' PENDING MOTIONS

Plaintiff Mark Klein has brought tort claims in this case against his former

spouses, Defendants Amanda Myers and Jessica Demers, who was formerly known as

Jessica Demers-Klein.   Each of the Defendants has filed a special motion to dismiss

pursuant to Maine's anti-SLAPP statute, 14 M.R.S. § 556[1] and also a motion to dismiss

pursuant to M.R. Civ. P. 12(b)(6).

---

[1]   The Media Law Resource Center describes anti-SLAPP statutes, their origins and purposes
as follows:

> Anti-SLAPP laws are designed to provide for early dismissal of meritless lawsuits
> filed against people for the exercise of First Amendment rights. The acronym
> "SLAPP" stands for "Strategic Lawsuit Against Public Participation – a phrase
> coined by two law school professors in the late 1980s. They identified a trend of
> retaliatory lawsuits brought to intimidate and silence opponents and critics who
> had spoken out in the public sphere, typically on land use and development issues.
> Anti-SLAPP statutes were proposed to provide a quick, effective and inexpensive
> mechanism to combat such suits.

http://www.medialaw.org/topics-page

*Factual Background*

The following recitation of facts is drawn from Plaintiff Klein's Complaint and the affidavits and affidavit exhibits that each of the three parties has filed in connection with the Defendants' special motions to dismiss, and also from material that may be considered in connection with a Rule 12(b)(6) motion to dismiss.

The anti-SLAPP statute authorizes the court to consider affidavits (and presumably exhibits incorporated into and annexed to affidavits) in addressing a special motion to dismiss, *see* 14 M.R.S. § 556. Under Rule 12(b)(6), the court may consider "official public documents, documents that are central to the plaintiff's claim, and documents referred to in the complaint without converting a motion to dismiss into a motion for a summary judgment when the authenticity of such documents is not challenged." *See Moody v. State Liquor and Lottery Commission,* 2004 ME 20, ¶ 10, 843 A.2d 43, 48.

Mark Klein and Amanda Myers were married in January of 2003 and divorced on September 26, 2011. (Def. Myers Ex. 5 at 2)[2]; (Pl.'s Compl. ¶ 10). Klein and Myers have two daughters together, A.K. and E.K. (Pl.'s Compl. ¶4). Their divorce settlement provided that they had shared parental rights over A.K and E.K. (Def. Myers Ex. 5 at 4).

---

[2] This and similar references are to the parties' affidavits and/or exhibits thereto.

Klein and Demers were married on January 2, 2015. (Pl.'s Compl. ¶ 13). They have one daughter together, S.K, born in September 2015. (Pl.'s Compl. ¶ 5). Klein and Demers lived together in Falmouth, Maine. (Demers Aff. ¶¶ 1, 9).

In 2016, the marital relationship deteriorated and Demers took her daughter S.K. to Pennsylvania on August 10, 2016, without notifying Klein. (Pl.'s Compl. ¶¶ 17-19).; (Demers Aff. ¶ 13). Klein filed for divorce from Demers on August 18, 2016. (Pl.'s Compl. ¶ 24). Klein left the marital home on August 22, 2016. (Pl.'s Compl. ¶ 37). Klein and Demers have lived separately since that date. (Pl.'s Compl. ¶ 37). (The two have since finalized their divorce, and Demers has returned to her previous surname. (Demers Aff. ¶ 34).

On August 31, 2016, as she was driving back to Maine, Demers received messages from Klein that the marital home had been broken into. (Demers Aff. ¶ 19). Demers spoke to police regarding the break-in. (Demers Aff. ¶ 19). She returned to Pennsylvania believing that Klein had staged the break-in. (Demers Aff. ¶ 19). On September 25, 2016, Demers installed a security system in the home. (Demers Aff. ¶ 22).

Prior to the break-in, on August 26, 2016, Demers had contacted Myers to check on Myers's daughters' wellbeing. (Demers Aff. ¶ 17), (Myers Aff. ¶ 7). The two Defendants met in person on September 19, 2016, with their attorneys present to discuss Klein's behavior of concern towards his daughters. (Demers Aff. ¶ 20).

After this meeting, Myers filed a protection from abuse ("PFA") complaint against Klein on behalf of herself and her children on September 22, 2016. (Myers Aff.

3

¶9). Myers was granted a temporary PFA order by the West Bath District Court on September 22, 2016. (Pl.'s Compl. ¶48).

Wanting to know the results of Myers's PFA action, Demers moved for a continuance of a parental rights hearing in the divorce case between her and Klein. (Demers Aff. ¶23); (Pl.'s Compl. ¶75). After the court granted Myers a temporary PFA order, the police searched Klein's residence for firearms on September 22, 2016 but found none. (Pl.'s Compl. ¶¶64-66); (Myers Aff. ¶10).

On September 30, 2016, the West Bath District Court convened a hearing on Myers's PFA complaint. (Demers Ex. 6). Demers was subpoena'ed to testify at the hearing. (Demers Aff. Myers and Demers testified

Also on September 30, 2016, Myers brought A.K. and E.K. to a pediatrician, Dr. Andrea Loeffler, to discuss Klein's behavior toward them, specifically what Myers described to the doctor as Klein's practice of applying balm to the girls' anuses. (Myers Aff. ¶11); (Pl.'s Compl. ¶50).

On October 3, 2016, Demers learned that her house had been broken into again. (Demers Aff. ¶25). Believing that Klein had perpetrated the break-in, Demers contacted Family Crisis Services ("FCS"), (Demers Aff. ¶25). Demers informed FCS about what had happened and that she believed Klein was the one who had broken into her home, in response to her testimony at the PFA hearing. (Demers Aff. ¶¶25-26).

The mandatory reporting law required FCS, upon receiving this information, to contact the Department of Health and Human Services ("DHHS") Office of Child

4

and Family Services ("OCFS") to report possible child abuse. (Demers Aff. ¶27); (Pl.'s Compl. ¶¶51-52). *See* 22 M.R.S. § 4011 (list of mandatory reporters).

When the OCFS contacted Demers on October 6, 2016, she answered questions about the break-in of her house, her daughter S.K., and the concerning behavior exhibited by E.K. (Demers Aff. ¶28). OCFS also called Myers on October 6, 2016. (Myers Aff. ¶12). OCFS referred this investigation to the Cumberland County District Attorney's Office for further investigation and the Brunswick Police began an investigation into Klein. (Pl.'s Compl, ¶¶61, 64).

On October 24, 2016, A.K and E.K. were interviewed by OFCS and the Brunswick Police Department. (Myers Aff. ¶13). Additionally, Myers was asked questions about Klein and his possible abuse of A.K and E.K. (Myers Aff. ¶14). On November 21, 2016, OCFS substantiated a finding that Klein had created a sexualized environment for A.K and E.K. (Demers Aff. ¶31); (Pl.'s Compl. ¶84). On February 23, 2017, OCFS reversed its substantiation. (Def. Myers Ex. 5 at 8).

During Myers's PFA hearing against Klein both Defendants testified about Klein's relationship and interactions with A.K. and E.K. (Demers Aff. ¶29); (Pl.'s Compl. ¶¶78-83). Also, an OCFS investigator testified that during the interview that OCFS conducted with Klein, Klein admitted that he had been applying "bag balm" to his older daughters' anuses from when they were in diapers to the present. Myers Aff. Ex. 2 at 271 (testimony of Ashley Emery at PFA hearing). The investigator also said Klein admitted to sleeping in the same bed with his older daughters and

5

acknowledged that he had showered with them although the investigator said Klein claimed to have been wearing a wetsuit at the time. *Id.* at 272-277.

On October 21, 2016, Klein filed a motion to modify the divorce judgment seeking primary physical residence of E.K and A.K., allocated parental rights and responsibilities, and child support. (Def. Myers Ex. 5 at 9). On December 10, 2016, Myers filed a motion to Modify Divorce Judgment seeking sole parental rights and responsibilities, primary residence of E.K. and A.K., sole discretion over visitation, and child support. (Def. Myers Ex. 5 at 9). On December 12, 2016, Myers dismissed her PFA action. (Pl.'s Compl. ¶89).

On September 11, 2017, the family court issued an order amending Klein's and Myers's divorce judgment. (Myers Aff. ¶18). This order granted Myers allocated parental rights and responsibilities and primary residence of A.K. and E.K. (Def. Myers Ex. 5 at 27). The order granted Klein one four-hour after school visit and one four-hour weekend visit each week, with increased contact if therapeutically supported. (Def. Myers Ex. 5 at 27).

Additionally, the court ordered counseling for Klein to assist in his reunification with A.K. and prohibited both parent from discussing litigation matters with their children and from using their children to get information about the other parent. (Def. Myers's Ex. 5 at 28). The order required Klein to pay Myers back child support and $340.13 per week. (Def. Myers Ex. 5 at 28-29). Neither party was awarded attorney's fees, based on their behavior and litigation strategies during the course of the proceeding. (Def. Myers Ex. 5 at 31).

6

Demers and Klein finalized their divorce on October 16, 2018. (Demers Aff. ¶34). The Divorce Judgment awarded Demers and Klein shared parental rights and responsibilities for S.K. (Demers Ex. 4 at 7). Primary residence for S.K. was with Demers, and Klein received a four-phase contact schedule and split holidays and vacation. (Demers Ex. 4 at 8-9). Klein is required to pay Demers $152 child support per week. (Demers Ex. 4 at 12). No attorney's fees were awarded. (Demers's Ex. 4 at 15).

*Procedural History*

Plaintiff Klein filed his complaint August 21, 2018, alleging 11 counts against Defendant Jessica Demers and Defendant Amanda Myers: (1) abuse of process; (2) wrongful use of civil process; (3) fraud; (4) defamation; (5) defamation *per se*; (6) invasion of privacy; (7) intentional infliction of emotional distress; (8) violation of civil/constitutional rights; (9) negligence; (10) negligent infliction of emotional distress; and (11) civil conspiracy.

The court granted Demers's motion to enlarge time to file an answer on September 26, 2019 and she filed an answer on October 16, 2018. Myers filed an answer on October 23, 2018. The court granted Demers's unopposed motion to seal on November 11, 2018 and granted Myers's unopposed motion to seal on December 12, 2018.

Demers filed a motion to dismiss pursuant to M.R. Civ. P. 12(b)(6) and a special motion to dismiss pursuant to 14 M.R.S. § 556 on November 6, 2018. Klein filed an

7

opposition to Demers's motions on November 27, 2018. Demers filed a reply to Klein's opposition on December 4, 2018.

Myers filed a motion to dismiss pursuant to M.R. Civ. P. 12(b)(6) and a special motion to dismiss pursuant to 14 M.R.S. § 556 on December 3, 2018. Klein filed an opposition to Myers's motions on December 26, 2018. Myers filed a reply to Klein's opposition on January 2, 2019.

*Discussion*

## I. Applicability of Maine's anti-SLAPP statute to this case

Both Defendants' special motions to dismiss argue that Klein's complaint should be dismissed in its entirety because the alleged causes of action all arise from what Maine's anti-SLAPP statute defines as protected "petitioning activity." 14 M.R.S. § 556 (2017).

The statute provides in pertinent part

> When a moving party asserts that the civil claims, counterclaims or cross claims against the moving party are based on the moving party's exercise of the moving party's right of petition under the Constitution of the United States or the Constitution of Maine, the moving party may bring a special motion to dismiss. The special motion may be advanced on the docket and receive priority over other cases when the court determines that the interests of justice so require. The court shall grant the special motion, unless the party against whom the special motion is made shows that the moving party's exercise of its right of petition was devoid of any reasonable factual support or any arguable basis in law and that the moving party's acts caused actual injury to the responding party. In making its determination, the court shall consider the pleading and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

14 M.R.S. § 556.

8

a.  The Three-Step Special Motion to Dismiss Standard

What procedure and analysis trial courts in Maine are to apply in addressing a

section 556 special motion to dismiss has evolved over time, as the Maine Law Court

has noted.  *See Gaudette v. Davis*, 2017 ME 86, ¶¶ 5-12, 160 A.3d 1190.  In its most

recent decision under Maine's anti-SLAPP statute, 14 M.R.S. § 556, the Maine Law

Court said:

> The application of the anti-SLAPP statute results in an inherent tension
> between the coexisting constitutional right to freedom of speech and the
> right to access the courts to seek redress for claimed injuries.
> Accordingly, in addressing a special motion to dismiss, the reviewing
> court must be careful to recognize these competing rights and work to
> achieve an appropriate balance. In an effort to achieve this balance, we
> require that the reviewing court use a three-step burden-shifting
> procedure.

*Hearts with Haiti, Inc. v. Kendrick*, 2019 ME 26, ¶ 10, ___ A.3d___,___
(internal citations omitted).

The procedure is as follows:

At the first step, the special movant must establish, as a matter of law, that "the

claims against [her] are based on [her] exercise of the right to petition pursuant to

the federal or state constitutions." *Gaudette v. Davis*, 2017 ME 86, ¶¶ 16-17, 160 A.3d

1190 (quoting *Morse Bros. v. Webster*, 2001 ME 70, ¶ 19, 772 A.2d 842).  If the special

movant fails to make the showing, the anti-SLAPP statute does not apply and the

special motion to dismiss is denied.  *Hearts of Haiti, Inc. v. Kendrick*, 2019 ME 26 at

¶ 11, ___A.3d at ___.   If the special movant does make that showing, the inquiry

moves to step 2, at which the burden shifts to the plaintiff.  *Gaudette v. Davis*, 2017 ME

86 at ¶ 17.

The plaintiff's burden at the second step is to make a prima facie showing that the defendant's "petitioning activity" was "devoid of any reasonable factual support or any arguable basis in law" and that the" petitioning activity" caused the plaintiff injury. *Id.* (quoting *Nader v. Me. Democratic Party (Nader I)*, 2012 ME 57, ¶¶ 16, 29-38, 41 A.3d 551). If the plaintiff fails to carry that burden, the special motion to dismiss is granted. *Id.*

If the plaintiff does carry that burden, the inquiry proceeds to the third step, at which the court, on motion of any party, "permits the parties to undertake a brief period of limited discovery, the terms of which are determined by the court after a case management hearing, and ☐ at the conclusion of that limited discovery period, the court conducts an evidentiary hearing." *Id.* at ¶ 18.

With this framework at hand, the analysis proceeds to the first step—whether Myers and Demers have each established as a matter of law that the conduct on which Klein's claims are based qualifies as "petitioning activity" for purposes of the anti-SLAPP statute.

b. Step One: Whether Defendants Have Shown that the Claims Against Them Are Based on Petitioning Activity

Defendants contend that Klein has sued them for engaging in protected "petitioning activity." (Def. Myers's Special Mot. Dismiss 8, 12); (Def. Demers's Special Mot. Dismiss 7).

Klein argues that the anti-SLAPP statute does not even apply in this case because: (1) his intent in bringing this law suit is not to chill the Defendants'

10

"petitioning activities" but rather to seek damages for Defendants' actions, (Pl.'s Opp'n to Def. Myers's Special Mot. Dismiss 2); (2) Defendants had ulterior motives when engaging in their "petitioning activities," (Pl.'s Opp'n to Def. Myers's Special Mot. Dismiss 6); (3) Defendants' "petitioning activities" were based on lies, (Pl.'s Opp'n to Def. Myers's Special Mot. Dismiss 7-8); and (4) his complaint is based on Defendants' pre-petitioning actions and not their "petitioning activities," (Pl.'s Opp'n to Def. Myers's Special Mot. Dismiss 2).

Klein's contention that his own alleged intent and the Defendants' alleged ulterior motives are relevant to the step one analysis is unpersuasive. Klein's intent in bringing this action is irrelevant to the question of whether the anti-SLAPP statute applies, because the statute establishes that a lawsuit premised entirely upon a defendant's petitioning activity should not be permitted to chill the defendant's exercise of First Amendment rights, unless the defendant's activity has no arguable factual support or basis in law and has harmed the plaintiff.

As to the relevance of the Defendants' motives, the Massachusetts Supreme Judicial Court has construed the similar Massachusetts anti-SLAPP statute to mean that "[a] special movant's motivation for engaging in petitioning activity does not factor into whether it has met its threshold [step one] burden." *477 Harrison Ave., LLC v. JACE Boston, LLC*, 477 Mass. 162, 168, 74 N.E.3d 1237 (2017), *citing Office One, Inc. v. Lopez*, 437 Mass. 113, 122, 769 N.E.2d 749 (2002). It is the step two analysis that has more to do with a special movant's motivation, in exploring the factual and legal basis for the special movant's petitioning activities.

11

Klein argues that because he is suing the Defendants for lying about him, the anti-SLAPP statute does not apply. That argument, too, is relevant to the step two inquiry, at which he has the burden to show that the Defendants lacked a factual or legal basis for their activity, but it is not relevant to the step one inquiry.

Klein's one threshold argument that is relevant to the step one inquiry is that his claims against Myers and Demers are based on their "pre-petitioning activity" rather than petitioning activity.

Maine's anti-SLAPP statute defines "a party's exercise of its right of petition" to encompass written or oral statements in six different categories:

> [1] "any written or oral statement made before or submitted to a legislative, executive or judicial body, or any other governmental proceeding";
>
> [2] "any written or oral statement made in connection with an issue under consideration or review by a legislative, executive or judicial body, or any other governmental proceeding";
>
> [3] "any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive or judicial body, or any other governmental proceeding";
>
> [4] "any statement reasonably likely to enlist public participation in an effort to effect such consideration"; or
>
> [5] "any other statement falling within constitutional protection of the right to petition government."

14 M.R.S. § 556.

Klein's complaint contains eleven counts. The court's review of a special motion to dismiss does not necessarily lead to an "all or nothing" outcome—the special motion may be granted as to some of the plaintiff's claims and denied as to others. *See Gaudette*

*v. Davis*, 2017 ME 86, ¶ 17, 160 A.3d 1190; *Camden Nat'l Bank v. Weintraub*, 2016 ME 101, ¶ 9, 143 A.3d 788.

Count 1 (Abuse of Process) – Klein alleges that Defendants "used the legal and law enforcement system in a manner improper in the regular conduct of such proceeding." (Pl.'s Compl. ¶ 106). By its very nature, this count must be based on statements to judicial and law enforcement agencies, and thus it concerns "petitioning activity" as defined in section 556.

Count 2 (Wrongful use of Civil Process) - Klein alleges that Myers "sought a protection from abuse" order (Compl. ¶ 112), and Demers sought "a continuance of an interim hearing," (Compl. ¶ 106). This count as well is plainly based on "petitioning activity" as defined in section 556. *See Morse Bros. v. Webster*, 2001 ME 70, ¶¶ 29-31, 772 A.2d 842.

Counts 3 (Fraud), 4, (Defamation), and 5 (Defamation *per se*) – Klein asserts that both Myers and Demers are liable to him for fraud and defamation based on various statements, as follows.

Paragraphs 119(A)-(E) of Klein's complaint enumerate the following allegedly fraudulent and defamatory statements by Demers:

A. Statements made by Demers to Myers on August 22, 2016 that Demers has seen Klein applying bag balm to the anuses of his two older daughters and that Demers interprets Klein's actions as not being for medical purposes but for sexual abuse.

B. Statements by Demers to Family Crisis Services on October 5, 2016 that Klein has sexually abused his daughters with Myers by applying bag balm to their anuses and that Demers has seen him do so.

13

C. Statements by Demers on October 6, 2016 to an Office of Child and Family Services investigator that Klein displayed inappropriate and sexualized behavior towards his children; that Klein was responsible for two break-ins at Demers's home and that Klein had committed domestic violence against Demers.

D. Statements by Demers on October 24, 2016 to the Maine District Court that she was concerned about the wellbeing of her daughter with Klein based on the allegations contained in Myers's PFA complaint against Klein. Klein asserts Demers knew that Myers's PFA complaint was largely based on Demers's own disclosures to Myers.

E. Statements by Demers September 30, 2016 and on November 14, 2016, in the course of her testimony at the PFA hearing in Myers's PFA case against Klein.
(Compl. ¶119).

Klein's complaint at paragraph 120(A) through (D) alleges the following against Myers:

(A) In her affidavit dated September 22, 2016 to support the temporary PFA Order [Myers] averred falsely that:

Klein routinely and without cause applied bag balm to the anus of both her children;
Klein showers with her children;
Klein has sexually abused his children;
Klein is a threat to sexually abuse his children; Klein had threatened to kill [Myers]

(B) On or about October 6, 2016 [Myers] made false and misleading statements to an OCFS investigator:

Klein inflicted domestic violence against her;
She was aware of, and corroborated the sexualized behavior of Klein as presented by [Demers];
Such corroboration by [Myers] was false and misleading;
Klein has a repeated history of prostitution;
Klein perpetrates emotional abuse against his children.

14

(C)   In a meeting on October 24, 2016 [Myers] falsely told a representative of the Brunswick police department:

> There is no valid reason for Klein to apply any ointment to his daughters;
> Klein raped his neighbor.

(D)   On or about September 30, 2016 and again on November 14, 2016, [Myers] made false and misleading statements to the PFA court:

> Her children with Klein did not have skin conditions in their anus region;
> Her children with Klein did not have any problems with their bowels;
> She knew of no incident other than in their infancy, where the children have been treated for discomfort regarding their ani;
> Her children never had eczema near their ani.

(Pl.'s Compl. ¶ 120).

Myers's and Demers's alleged statements made in court and made to the OCFS investigator plainly fall within the definition of "petitioning activity." *See* 14 M.R.S. § 556 (definition includes "any written or oral statement made in connection with an issue under consideration or review by a legislative, executive or judicial body, or any other governmental proceeding").

Demers's alleged disclosure to Myers and Demers's and Myers's disclosures to an FCS employee are less clearly so.  However, the statutory definition of "petitioning activity" is not limited to statements made directly to governmental entities or agencies.   The definition includes "any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive or judicial body, or any other governmental proceeding" means that any statement that is reasonably likely to trigger governmental review can fall within the scope of petitioning activity.

15

To qualify as a statement "reasonably likely to encourage consideration or review" by a government body or agency, the statement need not be submitted or made directly to the governmental body, because statements "made before or submitted to" a governmental body are separately included in the statutory definition of "petitioning activity." To qualify as a statement "reasonably likely to encourage consideration or review," a statement need only be likely to trigger some form of governmental action or review.

Demers's statements to Myers were a primary basis for Myers's subsequent PFA complaint. Demers was subpoena'ed to testify at the PFA hearing and, according to the transcript of portions of her testimony, she repeated in court the statements she had previously made to Myers, FCS and the OCFS. For purposes of the definition of "petitioning activity," it could be "reasonably expected" that Demers's disclosure to Myers about Klein's sleeping arrangements with his daughters and his application of bag balm would trigger the action that Myers promptly took—invoking the judicial PFA remedy and seeking to modify the divorce judgment.

Moreover, Family Crisis Services provides support and advocacy for victims of abuse and domestic violence and has been affiliated with the Maine Coalition to End Domestic Violence. *See Craig v. Caron*, 2014 ME 115, ¶ 14, 102 A.3d 1175. Maine law requires individuals in certain positions and occupations, including family and domestic violence advocates, to report suspected child abuse or neglect. *See* 22 M.R.S. § 4011-A (enumerating mandated reporters of child abuse or neglect). As such,

statements to FCS about abuse or domestic violence are reasonably likely to be conveyed to either law enforcement or DHHS or both.

In fact, Klein's complaint bolsters this point in alleging that Demers and Myers "knew or should have known" that their disclosures to OCFS and/or FCS would be forwarded to the District Attorney's office for investigation. (Pl. Compl. ¶¶ 62-63).

Klein additionally alleges that Myers made statements to the children's pediatrician that he sexually abused his children. (Pl.'s Compl. ¶ 50). Physicians are mandated reporters of suspected child abuse or neglect under Maine law. *See* 22 M.R.S. § 4011-A. Thus, although Myers denies saying Klein committed sexual abuse, her statements to the pediatrician about his behavior toward their daughters were "reasonably likely to encourage consideration or review of an issue by a legislative, executive or judicial body," within the meaning of the section 556 definition of "petitioning activity."

Whether anti-SLAPP protection applies is admittedly closest as to Demers's initial disclosure to Myers. Klein contends that the disclosure constitutes "pre-petitioning activity" not protected by the anti-SLAPP statute. However, "communications that are intimately intertwined with, and preparatory to, the filing of judicial proceedings qualify as petitioning activity for the purpose of the anti-SLAPP statute." *Graham-Suit v. Clainos*, 738 F.3d 1131, 1142-43 (9th Cir. 2013), *quoting Cabral v. Martins*, 177 Cal. App. 4th 471, 99 Cal. Rptr. 3d 394, 404 (Ct. App. 2009). "In the anti-SLAPP context, the critical point is whether the plaintiff's cause

17

of action itself was based on an act in furtherance of the defendant's right of petition or free speech." *City of Cotati v. Cashman*, 29 Cal. 4th 69, 78, 52 P.3d 695 (2002).

Klein also contended at oral argument that Demers could not invoke the anti-SLAPP statute because she was not exercising her own right of free speech, and cited the decision of the undersigned judge in *Warren v. Preti, Flaherty, Beliveau & Pachios, LLC*, 2012 Me. Bus. & Consumer LEXIS 29 at *13-15. In that case, however, the court decided that a business's response to a state agency investigation could not qualify as petitioning activity because the business was responding to, not initiating, a governmental inquiry. *See id.* at *14 ("[The special movant] did not bring the alleged security violations to the attention of the Office of Securities; *had it done so, this analysis might have had a different outcome.* [The special movant] was simply responding to inquiries in the context of a government investigation of third parties.") (emphasis added).

Here, Demers did bring the concern to the attention of Myers and then to FCS and OCFS. She was exercising the right of any person to report inappropriate acts involving a child to the child's parent and then to appropriate authorities. Her disclosure to Myers was a prelude to her disclosures to FCS, OCFS and ultimately to the District Court in the PFA hearing. The fact that persons who in good faith report suspected child abuse are statutorily immune from civil or criminal liability provides

support for the conclusion that Demers's statements to Myers, FCS and OCFS fall within the definition of protected "petitioning activity." *See* 22 M.R.S. § 4014(1).[3]

For these reasons, the court concludes that Demers's statements to Myers, and both Defendants' disclosures to FCS and the OCFS and their testimony in District Court alleged in Counts 4 and 5 of Klein's complaint are all "petitioning activity."

Count 6 (Invasion of Privacy) – Klein alleges that Defendants caused an invasion of his personal privacy. (Pl.'s Compl. ¶¶ 135-39). Klein generally states that Defendants invaded his privacy through "their actions." However, Klein does not specify how Defendants invaded his privacy, other than through the same statements and actions that are the basis for his defamation claims. (*See* Pl.'s Compl. ¶61 ("As a result of the report to OCFS by Family Crisis Services and the false statement made by [Defendants], Klein was referred to the Cumberland County District Attorney's office for investigation); ¶65 ("Police confronted Klein . . . causing an invasion of his quietude.")). Thus, the court construes Klein's invasion of privacy claim to be based on what the court has already determined was "petitioning activity."

Count 7 (Intentional Infliction of Emotional Distress) and Count 10 (Negligent Infliction of Emotional Distress) – Klein alleges that "Defendants' actions" caused him extreme emotional distress. (Pl.'s Compl. ¶¶ 141-44, 157-62). Again, Klein does not identify any actions by Defendants beyond what the court has already decided fall

---

[3] In fact, the immunity statute incorporates a definition of "good faith" that is similar to the anti-SLAPP statute's "devoid of any reasonable factual support or any arguable basis in law" standard. *See* 14 M.R.S. § 4014(1) ("Good faith does not include instances when a false report is made and the person knows the report is false

19

within the definition of "petitioning activity." (*See* Pl.'s Compl. ¶69 ("The investigation by OFCS caused Klein great embarrassment and harm to his reputation"); ¶90 ("The legal actions taken against Klein have caused him great embarrassment and harm to his reputation"); ¶91 ("The legal actions taken against Klein have caused him considerable psychological trauma and duress for which he has required active medical treatment and therapeutic assistance.")). Accordingly, the court deems Klein's emotional distress claim to be based on the Defendants' "petitioning activity."

Count 8 (Violation of Civil Rights/Constitutional Rights) – Klein alleges that Defendants used the court system to deprive him of his constitutional rights. (Pl.'s Compl. ¶¶146-50). This claim plainly is based on Defendants' "petitioning activity."

Count 9 (Negligence) – Klein's negligence claim once again generally refers to "Defendants' actions" as the basis of his negligence claim brought on behalf of his daughters, but does not allege any actions beyond those already addressed above. (Pl.'s Compl. ¶¶151-55). Thus, the negligence claim, too, is premised upon Defendants' "petitioning activity." (*See* Pl.'s Compl. ¶49 ("Temporary Restraining Order prevented Klein from communicating, visiting with or parenting his two daughters."); ¶77 ("Due to the misleading allegations made by Jessica regarding the PFA Complaint to the Family Court, Klein was again limited in his rights to interact with his daughter.")).

Count 11 (Civil Conspiracy) – Klein's civil conspiracy claims are based on Defendants' actions during judicial proceedings and an executive branch investigation and thus constitute "petitioning activity." (Pl.'s Compl. ¶¶ 163-66).

For the reasons given, the court deems all of Klein's claims set forth in his complaint to be based on Defendants' "petitioning activities" within the definition of "petitioning activity" contained in section 556. Accordingly, the Defendants' special motions to dismiss have met the Defendants' step 1 burden to show that the claims against them are within the anti-SLAPP statute.

c. <u>Step Two: Devoid of any Reasonable Factual Support or any Arguable Basis in Law</u>

The burden shifts to Klein to show that the Defendants' "petitioning activity" was "devoid of any reasonable factual support or any arguable basis in law" and that the petitioning activity caused him injury. *Nader I*, 2012 ME 57, ¶ 16, 41 A.3d 551. This test does not determine whether the alleged false or fraudulent statements were more likely true or more likely untrue, but looks only at whether they had any reasonable basis in fact. *See Gaudette*, 2017 ME 86 ¶ 21, 160 A.3d 1190.

The Defendants' factual allegations as to Klein's conduct fall into the following general areas:

- The allegation that he was in the habit of doing "bum checks" on his daughters and applying "bag balm" to their anuses.

- The allegation that he slept in the same bed as one or both of his older daughters

21

- The allegation that he had committed domestic violence against Myers and sexual assault against a neighbor.

- The allegation that he had showered with his older daughters.

Klein alleges that Defendants' references are based on lies and "half-truths." (Pl.'s Opp'n to Def. Myers's Special Mot. Dismiss 7-11). Klein provides transcripts from the 2016 PFA hearing and contradictory emails exchanged from 2011 to 2014 between Klein and Myers. (Pl.'s Ex. A, B, C). Establishing that a party's petitioning was based on "totally false" claims may constitute a prima facie showing that their "petitioning activity" was devoid of any reasonable factual support. *See Gaudette,* 2017 ME 86, ¶24, 160 A.3d 1190.

However, Klein's affidavit and memorandum submitted in opposition to the special motions to dismiss focus, for purposes of step 2, almost entirely upon the "bag balm" allegation. (*See* Pl.'s Opp'n to Def. Myers's Special Mot. Dismiss at 8-11; Affidavit of Mark Klein ¶¶18, 35-49). For example, Klein's affidavit does not deny the domestic violence allegation or that he has slept in the same bed with his daughters.

Moreover, even as to the "bag balm" allegations, Klein's affidavit does not deny that he has applied "bag balm" to his older daughters as Demers and Myers have asserted.

Thus, Klein does not seem to challenge the accuracy of Demers's and Myers's description of his behavior toward his older daughters. What he clearly does challenge is the interpretation he says they have placed on his behavior.

Although the Defendants deny that they ever accused Klein of child abuse or went beyond reporting his observed behavior, tt seems clear that Myers and Demers believed that Klein had engaged in inappropriate behavior at least toward his oldest daughter and came forward to FCS, OCFS and the court based on that belief. However, the focus is not on the validity of Myers's and Demers's opinion of Klein's behavior. Instead, the question is whether their opinion was devoid of any factual support. Based on the record, Klein has not established that what Demers and Myers reported to FCS, OCFS and the court was devoid of any factual support.

As noted above, the only aspect of their report Klein attempts to controvert is the Defendants' report that he was applying "bag balm" to his older daughter's anal areas. The record contains factual support for that report. Specifically, the record includes portions of the transcript of sworn court testimony by an investigator for OCFS that Klein acknowledged during an interview with her that he had been applying "bag balm" to the girls' anuses "since they were in diapers until now . . .," due to irritation and redness due to constipation Myers Aff., Ex. 2 at 268–70, 274. The witness also testified that the OCFS had determined that Klein had been applying "bag balm" to the older girls' anuses. *Id.* at 274.

Klein's memoranda in opposition to both special motions do not dispute that Klein acknowledged to the OCFS investigator that he had continued to apply "bag

23

balm" to his older daughters' anuses, as Demers and Myers asserted.[4] Instead, his opposition to Myers's special motion spends considerable energy justifying his use of "bag balm" and attacking Myers for supposedly claiming she did not know Klein was applying "bag balm." His affidavit includes email exchanges between him and Myers indicating plainly that Myers did know about Klein's use of "bag balm" at least as of 2013. Klein Aff. Ex. C.

The focus at this step 2 stage must remain on whether Klein has made a prima facie showing that Myers's allegations about the "bag balm" lacked reasonable factual support. Whether Myers knew that Klein had used it on the girls, and whether Myers had ever used it herself in the same manner, are not relevant.[5] The OCFS' investigator's sworn testimony that Klein had acknowledged his continued application of "bag balm" provides factual support for Demers's and Myers's allegations.

For purposes of step 2 of the analysis of Myers's and Demers's special motions to dismiss, the court concludes that Klein has not made a prima facie showing that the Defendants' disclosures regarding his application of "bag balm" to his older daughters were devoid of any reasonable factual support. Those being the only "petitioning

---

[4] At oral argument, however, Klein suggested that the OCFS investigator had misunderstood his answers to her questions. Be that as it may, her testimony plainly substantiates the validity of the Defendants' allegation.

[5] Myers responds to Klein's accusation by pointing out that she does not dispute knowing about Klein's use of "bag balm" when her daughters were younger; she says it was the revelation that Klein was still applying "bag balm" and still doing "bum checks" when the girls were old enough to tend to themselves, along with his practice of staying in the same bed with them, that caused her to suspect Klein's motives. *See* Myers Aff. ¶7; Def. Myers's Reply Mem. In Support of Special Mot. Dismiss at 13. Her testimony at the PFA hearing was to the same effect.

activities" that Klein's opposition attempts to controvert, the court further concludes that Klein has not met his burden for purposes of step 2 of the *Gaudette v. Davis* analysis.

Therefore, there is no occasion or basis for the analysis to proceed further along the three-step procedure.

*Conclusion*

Defendants Amanda Myers and Jessica Demers have established that Plaintiff Mark Klein's claims against them are based on the Defendants' petitioning activity within the meaning of the Maine anti-SLAPP statute. *See* 14 M.R.S. § 556. In response, Plaintiff Mark Klein has failed to meet his burden to establish that the Defendants' petitioning activity was devoid of any reasonable factual support or basis in law.

This result makes it unnecessary to address the Defendants' Rule 12(b)(6) Motions.

The Maine anti-SLAPP statute authorizes the court to award costs and reasonable attorney fees to the moving party on a special motion to dismiss. *See* 14 M.R.S. § 556 ("If the court grants a special motion to dismiss, the court may award the moving party costs and reasonable attorney's fees, including those incurred for the special motion and any related discovery matters"). This Order authorizes Defendants Myers and Demers to file a motion for an award of attorney fees and costs, including fee affidavits. Briefing on any such motion shall proceed according to the applicable civil rule.

Accordingly, it is ORDERED AS FOLLOWS:

1. The Special Motions to Dismiss filed by Defendants Amanda Myers and Jessica Demers are hereby granted.

2. The Defendants' Motions to Dismiss pursuant to M.R. Civ. P. 12(b)(6) are hereby dismissed as moot.

3. In light of the grant of Defendants' special motions to dismiss, the court will consider awarding Defendants their costs and reasonable attorney fees against Plaintiff pursuant to 14 M.R.S. § 556. Defendants may file motions for an award of costs and attorney fees within 21 days of the docketing of this Order, and further briefing on any such motions shall be according to M.R. Civ. P. 7(c) and (e).

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated April 17, 2019

A. M. Horton, Justice

Entered on the Docket: 4/22/19

26

STATE OF MAINE                                    SUPERIOR COURT

Cumberland, ss.                                     Civil Action

REC'D CUMB CLERKS OFC
JUN 13 '19 AM 10:42

MARK KLEIN,                          )
                                     )
            Plaintiff                )
                                     )
    v.                               )          Docket No. CUMSC-CV-18-0377
                                     )
JESSICA DEMERS-KLEIN                 )
now known as Jessica Demers, and     )
AMANDA MYERS,                        )

            Defendants

### ORDER ON PLAINTIFF'S MOTION TO RECONSIDER

Pursuant to M.R. Civ. P. 59, Plaintiff Mark Klein has filed a Motion To

Reconsider directed to the court's Order dated April 17, 2019, granting the

Defendants' Special Motions to Dismiss pursuant to Maine's anti-SLAPP statute, 14

M.R.S. § 556. Defendants Jessica Demers and Amanda Myers have filed oppositions

to the Motion to Reconsider, and Plaintiff Klein has filed reply memoranda to both

oppositions.

The court elects to decide the Motion to Reconsider without oral argument.

*See* M.R. Civ. P. 7(b)(7). For the reasons stated below, the Motion is denied.

The fundamental question of law presented by Klein's Motion to Reconsider is

this: In considering a special motion to dismiss in accord with the three-step

procedure established in *Gaudette v. Davis,* 2017 ME 86, ¶¶ 16-17, 160 A.3d 1190,

must the court schedule a step 3 evidentiary hearing even if the record before the court

at step 2 amply demonstrates that the petitioning activity at issue had reasonable factual support and a solid basis in law?

The Defendants' special motions to dismiss were accompanied by affidavits and exhibits intended to demonstrate that (1) Klein's claims against them were based on petitioning activity for purposes of section 556, and (2) that their petitioning activity involved statements and sworn testimony in court that had more than a reasonable degree of factual support and a more than an arguable basis in law.

Klein's response included his affidavit and exhibits[1] in which he denied and disputed both (1) that his claims arose out of Defendants' petitioning activity and (2) that what the Defendants claimed to be their petitioning activity had any support at all in fact or basis in law. As noted in the court's April 17, 2019 Order, Klein's filings focused on the Defendants' allegations that he applied bag balm to his older daughters' anal areas and did not controvert other areas referred to in his complaint.[2]

In other words, the parties' filings addressed the issues to be decided at both step 1 and step 2 according to *Gaudette*. The issue whether the Defendants were engaged in petitioning activity for purposes of step 2 was joined in the parties' filings,

---

[1] Klein's Motion to Reconsider also contends that the Defendants should not have included exhibits with their affidavits, even though he did likewise. Nothing in the statute limits a parties' ability to attach and incorporate exhibits in the party's affidavits in support of a special motion to dismiss. Nothing in the statute limits the parties' affidavits to facts and information admissible in evidence.

[2] In an apparent attempt to rectify the omission, Klein's Motion to Reconsider includes a further affidavit from Klein in which he denies the accuracy of accusations and allegations he says were made by the Defendants. However, he has not established that Defendants even made some of the statements. In any event, the court declines to consider the further affidavit.

2

and so was the issue whether their activity had reasonable factual support and a basis in law for purposes of step 2.

This court's Order granting Demers's and Myers's special motions to dismiss determined, based on the entire record before the court at the time, that the petitioning activity that was the subject of Klein's claims against them had reasonable factual support and a basis in law for purposes of section 556, and therefore that Klein had not made a prima facie showing to the contrary.

Klein's Motion to Reconsider appears to contend that the court should not have considered the entire record in deciding whether he, as the non-moving party, had met his step 2 burden to make a prima facie showing that the Defendants' petitioning activity lacked reasonable factual support and an arguable basis in law. Klein's Motion to Reconsider contends that, regardless of what the Defendants had submitted into the record to show factual and legal support for their petitioning activity, he had met his step 2 burden merely by denying that what Demers and Klein had said and testified to was untrue. His Motion also says that the court should have taken the allegations of his complaint in and of themselves as being sufficient to meet his step 2 burden.

The court remains persuaded that under *Gaudette*, the court needs to consider the entire record in deciding whether the non-moving party has made the required step 2 prima facie showing. A similar question is presented in the context of summary judgment--whether the non-moving party has made a prima facie showing sufficient to defeat the motion—and the court certainly does not disregard the moving party's

3

submittals and look only at the non-moving party's opposition in deciding that question.

Klein also contends that, in dismissing his claims without convening a step 3 hearing, this court made credibility determinations about the accuracy of the Defendants' statements and testimony and the testimony of the Department of Health and Human Services caseworker to the effect that Klein had admitted applying bag balm to his daughters' anal regions in the manner Defendants alleged he did.

The court did not do that. What the court did was look at the record, which clearly indicates that the accuracy of the testimony given by the Defendants and by the DHHS caseworker was evaluated by the judges who heard that testimony. This court did not evaluate the credibility of that testimony, because the judges who heard the testimony did so and issued orders based on their evaluation of the testimony.

In that sense, it was the very nature of the petitioning activity in this case that guided the court's decision. The petitioning activity at issue in this case did not involve unsworn and untested out-of-court accusations, the credibility of which, if denied, would need to be tested at a step three evidentiary hearing.

The petitioning activity at issue consisted entirely of Myers's and Demers's efforts to gain access to the courts and present their concerns about Klein's behavior. Though the activity included prefatory statements to a pediatrician, child protective workers, police officers and family crisis advocates, all of the activity for which Klein has sued Myers and Demers arose out of their efforts to invoke the protection of governmental agencies and the courts—classic petitioning activity.

4

Klein clearly seeks the step 3 evidentiary hearing so he can challenge the accuracy of the Defendants' statements and in-court testimony in the family court and the protection from abuse court. But Klein already had that opportunity. And he used it, in cross-examining both Defendants and the caseworker and in presenting his own evidence.

Thus, the step 3 evidentiary hearing Klein seeks would basically be a do-over of the DHHS process and the proceedings in the family case and protection from abuse case. But the factual support and legal basis for the Defendants' petitioning activity has already been presented, tested, evaluated and factored into agency and judicial decisions, and Klein is not entitled to a do-over.[3]

IT IS HEREBY ORDERED: Plaintiff's Motion for Reconsideration is denied. Plaintiff has 20 days from the date of this Order to file his responses to the Defendants' pending applications for an award of attorney fees.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated June 13, 2019

Entered on the Docket: 6/14/19

A. M. Horton, Justice

---

[3] Another argument against Klein's contention that a step 3 evidentiary hearing should be held so this court can determine whether the Defendants and the DHHS caseworker testified falsely in the court hearings is that witnesses are absolutely immune from civil liability for their relevant sworn testimony in court, regardless of whether the testimony is true or false, *see Hurley v. Towne*, 155 Me. 433, 436-39, 156 A.2d 377 (1959); *Dunbar v. Greenlaw*, 152 Me. 270, 128 A.2d 218 (1956). The court's April 17, 2019 Order deemed the Defendants' Rule 12(b)(6) motions moot but they plainly would have been granted at least in part if the court had not decided that Klein had not met his burden of production at step 2 in response to the special motions to dismiss.

5